COMMODITY FUTURES TRADING
COMMISSION, Plaintiff,

v.

HANOVER TRADING CORP.,
et al., Defendants,

and

The Person known as "Jeffrey Roberts,"
et al., Relief Defendants.

No. 98 Civ. 1365(LAK).

United States District Court,
S.D. New York.

Feb. 2, 1999.

David Berry, Lawrence H. Norton, Division of Enforcement, Commodity Futures Trading Commission, for Plaintiff.

Paul W. Verner, Verner Simon & Rocha, LLP, New York City, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This case involves an allegedly fraudulent commodity operation, Hanover Trading Corporation ("Hanover") and presents a significant issue regarding the propriety of ordering disgorgement by a so-called "relief defendant"—one who is not charged with wrongdoing—of money allegedly traceable to the alleged wrongdoers.

### Facts

The complaint in this case contains three causes of action. The first alleges that defendants Hanover, Dupont, Singer and Droge (the "Principal Defendants") violated Section 4b(a) of the Commodity Exchange Act (the "Act")[1] by making material false statements and omissions in connection with orders to make, or the making of, contracts of sale of commodities for future delivery ("futures contracts"), misappropriating customer funds, and issuing false reports to customers. The second alleges violations by the Principal Defendants of Section 4(a) of the Act[2] in that the alleged futures contracts were sold in unlawful off-exchange transactions. The third seeks disgorgement by Aronowitz and the other relief defendants on the theory that the funds that are the subject of the claim are directly traceable to the proceeds of the fraud carried out by the Principal Defendants, that the relief defendants are not *bona fide* purchasers with legal and equitable title to the funds they received, and that the relief defendants would be enriched unjustly ab-

sent disgorgement. The case has been disposed of as to all Principal Defendants and relief defendants but Aronowitz. Singer has pleaded guilty to criminal charges in connection with these events.[3]

Plaintiff Commodity Futures Trading Commission (the "CFTC") moves for summary judgment requiring relief defendant Paul Aronowitz to disgorge the sum of $73,599.01 plus interest. In an order dated December 28, 1998, this Court struck Aronowitz's untimely papers in opposition to the Commission's summary judgment motion. In accordance with Local Civil Rule 56.1, all of the factual assertions contained in Plaintiff's Statement of Facts Not in Dispute ("Pl. 56.1 St.") therefore are deemed established for purposes of the motion. The remaining question is whether, given those facts, the CFTC is entitled as a matter of law to the judgment it seeks.[4] The only points warranting discussion in that regard are whether (1) the investments sold by defendant Hanover Trading Corp. ("Hanover") were futures contracts within the meaning of the Act and thus within the CFTC's jurisdiction and, if so, (2) disgorgement is an appropriate remedy against Aronowitz on the facts of this case.

Briefly stated, the facts are these. Hanover was engaged in selling an investment program involving commodities through telephone solicitation or telemarketing. None of the contracts it sold to its customers was concluded on a registered contract market, and so all violated Section 4b(a) of the Act if they were futures contracts. Moreover, Hanover's solicitations were fraudulent, and it misappropriated customer funds.

Aronowitz worked for Hanover. He solicited investments in these futures contracts through telemarketing, helped defendant Singer run the Hanover office, interviewed potential telemarketers and trained those whom Hanover hired, participated in fraudulent solicitations himself, and spoke with customers who had complaints.[5] He knew that

---

1. 7 U.S.C. § 6b(a).

2. *Id.* § 6(a).

3. *United States v. Singer,* No. 98 Crim. 551(HB).

4. *See, e.g., Davidson v. Keenan,* 740 F.2d 129 (2d Cir.1984).

5. Pl. 56.1 St. ¶¶ 52–58.

Hanover itself did not purchase physical commodities and told customers that they would not have to take delivery.[6] He also used an alias on a letter sent to new customers in an apparent attempt to create the impression that Hanover was more substantial an operation that in fact it was.[7] Nevertheless, the complaint does not accuse Aronowitz of any violation of law and, as will appear, the Commission has not charged him in this motion with knowledge of the fraudulent nature of Hanover's conduct.

The Commission seeks to have Aronowitz disgorge the proceeds of 48 checks drawn on Hanover bank accounts and paid to Aronowitz as commissions with respect to investments he solicited for Hanover.[8] Hanover's source of those funds was payments of customers in respect of the illegally solicited investments.[9]

## Discussion

As the facts set forth in the Commission's Rule 56.1 statement are established for purposes of the motion, there are but two issues requiring discussion—whether the investments marketed by Hanover were futures contracts subject to the jurisdiction of the CFTC and whether the Commission is entitled to disgorgement from Aronowitz on these facts.

### Futures Contracts

▉▉▉ While the statute does not define contracts for future delivery, or futures contracts, the cases demonstrate that they have two salient characteristics. First, futures contracts are contracts for the purchase or sale of a commodity for delivery in the future at a price that is established at the time the contract is initiated.[10] Second, the ability to offset the obligation to purchase by selling the contract, or to offset the obligation to deliver by buying a contract, "is essential, since investors rarely take delivery against the contracts."[11] The lack of an expectation that delivery of the physical commodity will be made is an important factor indicating the presence of a futures contract.[12]

Hanover's contracts involved the purchase of commodities for future delivery at prices agreed when the transactions were initiated. The "positions" were purchased in the expectation that they would be offset by selling transactions. There was no intention or expectation that Hanover's customers ever would take delivery.[13] In consequence, the investments sold by Hanover were futures contracts.[14] The claims asserted here therefore fall under the Act and within the jurisdiction of the CFTC.

### Disgorgement

The Commission seeks disgorgement of the payments to Aronowitz on two theories. First, it argues that the money paid to Aronowitz was obtained illegally by Hanover and that Aronowitz has no legitimate ownership interest in it.[15] In any case, it maintains, a constructive trust should be imposed upon those funds because they were obtained ille-

6.  *Id.* ¶¶ 59–60.

7.  *See id.* ¶ 62.

8.  *Id.* ¶ 43, 46, 51–52.

9.  *Id.* ¶¶ 39–43.

10.  *E.g., CFTC v. Noble Metals Int'l, Inc.,* 67 F.3d 766, 772 (9th Cir.1995), *cert. den.* 519 U.S. 815, 117 S.Ct. 64, 136 L.Ed.2d 26 (1996).

11.  *E.g., CFTC v. Co Petro Mktg. Group, Inc.,* 680 F.2d 573, 580 (9th Cir.1982).

12.  *See. e.g., id.* at 581.

13.  Pl. 56.1 St. ¶¶ 11–20.

14.  The Act excludes "cash forward" contracts from CFTC regulation by providing that "[t]he term 'future delivery' . . . shall not include any sale of any cash commodity for deferred shipment or delivery." 7 U.S.C. § 2. A "cash forward" contract, however, is one in which the buyer enters into the contract in contemplation or expectation of taking physical delivery. *See, e.g., CFTC v. Co Petro Mktg., Inc.,* 680 F.2d 573, 577–79 (9th Cir.1982); *Bank Brussels Lambert, S.A. v. Intermetals Corp.,* 779 F.Supp. 741, 749 (S.D.N.Y.1991). The record here establishes that the "transactions Hanover offered and entered into with customer [*sic*] were solicited explicitly for the purpose of assuming the risk of commodity price changes, and were not entered into for the purpose of obtaining delivery of the underlying commodity." (Pl. 56 .1 St. ¶ 13) The cash forward exclusion therefore is inapplicable here.

15.  Pl. Mem. 11.

gally by Hanover and such relief is warranted to avoid unjust enrichment of Aronowitz.[16]

The first of the Commission's arguments depends upon the proposition that Hanover never held any legitimate interest in the funds because its agreements with investors violated the Act and, unlike contracts in violations of the federal securities laws, were void rather than merely voidable.[17] The argument seems to be that Hanover could not pass any interest to Aronowitz because Hanover itself never had any interest in the money.

▮ The Commission points to nothing in the Act that provides that a contract in violation of its terms is void. The only authority it cites for this proposition is an administrative consent order, *Matter of MG Refining and Marketing, Inc.*,[18] an authority of limited value to begin with.[19] *MG Refining*, moreover, merely recited that certain agreements were off-exchange contracts which were "illegal, and therefore void, under Section 4(a) of the Act ..."[20] But Section 4(a), while rendering off-exchange futures contracts unlawful, does not state that they are void as opposed to voidable. Moreover, the Commission's argument here flies in the face of a plethora of authority holding that even contracts made in violation of the securities laws, and thus subject to Section 29(b) of the Securities Exchange Act of 1934,[21] which states that such contracts are "void,"

are merely voidable at the option of the innocent party.[22]

▮ The fact that transactions in violation of the Commodity Exchange Act are no more than voidable requires rejection of the Commission's first argument. In *SEC v. Levine*,[23] the Second Circuit held that defendants had acquired property interests in the proceeds of allegedly unlawful securities transactions notwithstanding the voidability of those transactions.[24] While the Court recognized that "a party who acquires property from a defrauding party and who has actual knowledge of the fraud may himself acquire only voidable title,"[25] the Commission has neither alleged nor proved actual knowledge by Aronowitz of the fraudulent nature of Hanover's conduct. The Commission's Rule 56.1 Statement, while establishing facts from which one might draw an inference of such knowledge, carefully avoided asserting that he had actual knowledge of the fraudulent character of Hanover's activities.[26] As the CFTC's papers in support of its motion for summary judgment must be viewed in the light most favorable to the non-moving party,[27] the Court may not draw that inference on this motion.

▮ The second of the Commission's arguments presents its own problems. It often is said that "disgorgement does not penalize, but merely deprives wrongdoers of ill-gotten

---

16. *Id.* 12.

17. *Id.* 11.

18. 1995 CFTC Lexis 190 (CFTC July 27, 1995).

19. While the Court recognizes that construction of a statute by an administrative agency charged with its administration is entitled to substantial weight, *Chevron, U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Aluminum Co. of America v. Central Lincoln Peoples' Util. District*, 467 U.S. 380, 389, 104 S.Ct. 2472, 81 L.Ed.2d 301 (1984), a consent order simply memorializes an agreement of the parties to end litigation upon certain terms. An unsubstantiated assertion of a legal proposition in such a document is untested in the adversary crucible. It may reflect nothing more than careless drafting or the view of an aggressive staff member that has not been considered carefully by the Commission itself. Hence, it is not necessarily reliable evidence of an agency's considered view of the issue.

20. *Id.*, at *13.

21. 15 U.S.C. § 78cc(b).

22. *E.g., Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 387, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).

23. 881 F.2d 1165 (2d Cir.1989).

24. *Id.* 1176–78.

25. *Id.* at 1176.

26. It doubtless avoided such an assertion in an effort to prevent Aronowitz from easily raising a genuine issue of arguably material fact by denying actual knowledge.

27. This is so notwithstanding Aronowitz's failure to submit timely opposing papers.

gains." [28]   In ordinary circumstances, therefore, there is no basis for disgorgement by an innocent party.   Indeed, *Levine* reversed a district court order imposing a constructive trust on the proceeds of the allegedly unlawful securities transactions precisely because the district court did so on the basis of previous consent decrees and therefore without any adjudication of wrongdoing. [29]

To be sure, it is well established under the securities and, by analogy, the commodities laws that district courts, at the behest of the SEC and CFTC, respectively, in appropriate cases may reach funds held by non-parties. But that power is not entirely boundless.

In *Deckert v. Independence Shares Corp.,* [30] the wellspring of this authority, the Supreme Court in relevant part merely held sufficient a bill in equity seeking restitution from a relief defendant of funds held by the relief defendant "for account of [the principal defendant], which consisted in part of the payments alleged to have been procured by the fraud of" the principal defendant. [31]   Thus, the bill did not seek recovery of funds to which the relief defendant had a claim of entitlement in his own right.   Subsequent cases have extended *Deckert* to permit recovery from relief defendants, irrespective of their culpability, who possess illegally obtained profits and have no legitimate claim to them. [32] perhaps the broadest extension came recently in *SEC v. Antar,* [33] where the district court, on a theory of unjust enrichment, ordered disgorgement by innocent minors of proceeds from stock held for their benefit under the Uniform Gifts to Minors Act and fraudulently sold on their behalf by a principal defendant. [34]

Each of these cases focused on the relief defendant's lack of a legitimate claim to the money sought, whether because the relief defendant was a gratuitous beneficiary of the principal defendants' fraud or because he or she merely was the custodian of the principal defendants' assets.   Here, however, the Commission wants to seize funds paid as compensation for services actually performed for a principal defendant, albeit paid out of proceeds of the principal defendant's fraud. And that difference—the fact that this defendant performed services for Hanover for which he presumably was entitled to be paid—is significant.   It suggests that Aronowitz, in the words of the Commission's cases, has a "legitimate claim" to the money absent proof of culpability on his part.

In other cases in which relief defendants claimed to have earned the money sought, courts have permitted seizure or ordered disgorgement only after determining that the relief defendant in fact had no legitimate claim to the money.   In *SEC v. Colello,* [35] for example, the SEC sought to seize the proceeds of a large fraud, including $2.9 million paid to relief defendant Colello.   Colello, however, claimed that the money he received was payment for services rendered, namely the procurement of letters of credit for the enterprise. [36]   The Ninth Circuit approved seizure of Colello's funds after the district court had found that the evidence " 'demonstrate[d] the absence of any legitimate call on the funds.' " [37]   In doing so, the circuit noted the multiple opportunities which the district court had afforded Colello to show some legitimate entitlement to the money. [38]

No such determination is possible on the record before this Court now.   The Commis-

**28.** *CFTC v. Hunt,* 591 F.2d 1211, 1222 (7th Cir. 1979); *see generally* VIII Louis Loss and Joel Seligman, Securities Regulation 3741 (1991).

**29.** 881 F.2d at 1180–83.

**30.** 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940).

**31.** *Id.* at 289, 61 S.Ct. 229.

**32.** *E.g., SEC v. Cherif,* 933 F.2d 403, 414 n. 11 (7th Cir.1991), *cert. den.* 502 U.S. 1071, 112 S.Ct. 966, 117 L.Ed.2d 131 (1992); *SEC v. Antar,* 831 F.Supp. 380, 399 (D.N.J.1993).

**33.** 15 F.Supp.2d 477 (D.N.J.1998).

**34.** *Id.* at 493.

**35.** 139 F.3d 674 (9th Cir.1998).

**36.** *Id.* at 675.

**37.** *Id.* at 678.

**38.** *Id.*

sion's 56.1 statement does not allege that Aronowitz knowingly participated in a fraudulent scheme and therefore was enriched unjustly. The issue analytically is the same as on the first of the Commission's arguments—whether Aronowitz had sufficient knowledge of the nature of Hanover's conduct to make his retention of his compensation inequitable. And the Commission's argument fails for the same reason. It has failed to establish the absence of a genuine issue of fact as to Aronowitz's state of mind.

### *Conclusion*

For the reasons set forth above, the Commission's motion for summary judgment as against relief defendant Aronowitz is denied. The Court nevertheless determines, under Fed.R.Civ.P. 56(d), that there is no genuine issue as to any of the facts set forth in the Commission's Statement of Facts Not in Dispute, all of which are deemed established for the purposes of this action. The only remaining issue for trial is whether Aronowitz's mental state makes disgorgement by him appropriate. That issue will be tried to the Court commencing on February 9, 1999 at 9:30 a.m.

SO ORDERED.