Luis Alfonso KRAUSE,
et al., Plaintiffs,

v.

FOREX EXCHANGE MARKET,
INC., et al., Defendants.

No. 04 Civ. 6197(LAK).

United States District Court,
S.D. New York.

Feb. 10, 2005.

Kevin P. Conway, Conway & Conway, New York City, for Plaintiffs.

Louise Sommers, Law Offices of Louise Sommers, New York City, Lloyd Kadish, Lloyd Kadish & Associates, Ltd., Chicago, IL, for Defendant Forex Capital Markets, LLC.

Terence W. McCormick, Mintz & Gold LLP, New York City, for Defendants Andres Prevoo and Forex Exchange Market, Inc.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiffs, all aliens, claim to have been defrauded in an investment scheme in which they were induced to invest in foreign currencies and lost all of their investments. They sue Forex Capital Markets, LLC ("FXCM"), a registered futures commission merchant ("FCM") with which they traded, as well as a number of other defendants. The matter is before the Court on the motion of FXCM to dismiss the complaint for lack of subject matter jurisdiction and to dismiss the first cross-claim of two of the other defendants.

### Facts

As the motion is directed to the issue of subject matter jurisdiction, the pertinent parts of the unduly prolix 74–page complaint may be summarized briefly.

### I. The Scheme

Plaintiffs are clients of an investment advisory firm called Private Investors Peru ("PIP").[1] All are citizens of Peru save one, which is a British Virgin Islands corporation.[2]

Beginning in the fall of 2002, defendants Henry J.S. Lee, Andres Prevoo, and Forex Exchange Markets, Inc. ("FXEM") solicited PIP and, subsequently, plaintiffs to invest in a foreign currency trading scheme,[3] allegedly by understating the

1. Cpt ¶ 1.
2. *Id.* ¶¶ 10–13
3. *Id.* ¶ 4.

risks, overstating their experience and success, and otherwise misleading the plaintiffs. They and defendant Alexander D. Lee, all of whom allegedly operated through a number of defendant entities,[4] obtained limited powers of attorney or other documents from all of the plaintiffs save one pursuant to which plaintiffs granted FXEM discretion in trading their accounts.[5] At the same time, Henry Lee, Prevoo and FXEM caused plaintiffs to open accounts with, and send their money directly to, FXCM.[6] Each of the plaintiffs received from FXCM and executed a risk disclosure statement and client agreement.[7] In early 2003, Prevoo informed PIP and two of the plaintiffs that FXEM was merging with BMG and that plaintiffs' FCM would be changed from FXCM to defendant FX Solutions, LLC ("FXS").[8]

Henry Lee, Prevoo and their affiliates proceeded, according to the complaint, to trade plaintiffs' accounts and to take large commissions for themselves, all the while misleading plaintiffs as to the profitability of these activities. By mid-2003, however, it became reasonably clear that plaintiffs' money was gone.

## II. The Complaint

Jurisdiction allegedly is based on alienage and on the presence of claims under the Commodity Exchange Act ("CEA").[9] It therefore is important to detail the parties and the nature of the federal claims asserted.

### A. Parties

As noted, the plaintiffs all are aliens—the individuals citizens of Peru and the corporation an entity organized under the laws of the British Virgin Islands.

There are five individual defendants.[10] The complaint alleges that Prevoo is a Peruvian citizen and a resident of New Jersey. On the latter basis, it asserts that he "is a 'citizen' of New Jersey, as that term is used in 28 U.S.C. § 1332(a)."[11] Three of the other four are alleged to be residents of either New York or New Jersey, although there is no allegation as to their citizenship.[12] There are no allegations as to either the citizenship or residence of the fifth.[13]

Three defendants are corporations. FXEM, BMG and Q–Tech all allegedly are citizens of New York, New Jersey and/or Delaware.[14]

Two defendants—FXCM and FXS—are alleged to be limited liability companies.[15] The complaint does not allege the identity, much less the citizenship, of their members.

### B. The Claims

The complaint contains twenty counts or claims for relief. For present purposes,

---

4. FXEM, Birkin McLaughlen Group ("BMG") and Q–Tech Derivatives, Inc. ("Q–Tech"). *See id.* ¶¶ 5–6.

5. *See id.* ¶¶ 57–58, 108–09, 160–61, 204–05. Plaintiff Copernic, Inc., allegedly did not grant such authority. *Id.* ¶ 143. The complaint alleges, however, that its "representative" was plaintiff Krause. *Id.* ¶ 138.

6. *Id.* ¶¶ 56–57.

7. Sassoon Decl. and exhibits.

8. Cpt. ¶¶ 74, 76.

9. *Id.* ¶¶ 27–28.

10. Prevoo, Henry and Alexander Lee, Thomas Frederick Plaut and Robert S. Cortright.

11. Cpt. ¶ 15.

12. *Id.* ¶¶ 16, 21 and 22.

13. *See id.* ¶ 19.

14. *Id.* ¶¶ 14, 18, 23.

15. *Id.* ¶¶ 17, 20.

the Court need focus only on those which purportedly are based on the CEA:

- *Count I.* Alleged violation by Prevoo, the Lees, FXEM, Q–Tech, BMG and FXS of Section 4b of the CEA [16] and 17 C.F.R. § 1.1(b).
- *Count XVI.* Control person liability against FXCM, FXS, Plaut and Cortwright pursuant to Section 13(b) of the CEA [17] on the theory that these defendants are liable for the acts and omissions of FXEM, Prevoo and Q–Tech.
- *Count XVII.* CEA § 2(a)(1) principal-agent liability [18] against FXCM and FXS on the theory that they are strictly liable as principals for the actions of their alleged agents, FXEM, Prevoo, Henry Lee, Q–Tech and BMG.
- *Count XVIII.* CEA § 2(a)(1) principal-agent liability against BMG on the theory that it is strictly liable as principal for the actions of its alleged agents, Prevoo and Henry Lee.

Moreover, as FXCM is alleged to be liable under the CEA only vicariously for the actions of FXEM, Prevoo, Henry Lee, Q–Tech and BMG, it is important to focus on the alleged CEA violations by these defendants (the "Alleged Primary Violators").

The complaint alleges that the defendants' investment scheme purported to offer the plaintiffs the opportunity to invest in "spot" foreign currency.[19] It goes on to allege, however, that "[t]he contracts [we]re for future delivery of foreign currencies that are cash settled in U.S. dollars," that the prices were set when the contracts were initiated and could be settled by offset or other means to avoid delivery, and that the plaintiffs in fact did not anticipate taking delivery.[20] It therefore asserts that the foreign currency contracts at issue were in fact futures contracts rather than spot transactions.[21]

### Discussion

#### I. FXCM's Motion to Dismiss the Complaint

##### A. Subject Matter Jurisdiction—the CEA Claims Against FXCM

FXCM seeks dismissal of the CEA claims against it on the grounds that the contracts that plaintiffs purchased are not "futures contracts" subject to the CEA and, in any case, that the provisions of the CEA under which plaintiffs sue FXCM would not apply.

The CEA does not define "contracts for future delivery," more commonly referred to as futures contracts.[22] The cases indicate, however, that such contracts:

> "have two salient characteristics. First, futures contracts are contracts for the purchase or sale of a commodity for delivery in the future at a price that is established at the time the contract is initiated. Second, the ability to offset the obligation to purchase by selling the contract, or to offset the obligation to deliver by buying a contract 'is essential, since investors rarely take delivery against the contracts.' The lack of an expectation that delivery of the physical commodity will be made is an important factor indicating the presence of a futures contract." [23]

16. 7 U.S.C. § 6b

17. *Id.* § 13c(b).

18. *Id.* § 2(a)(1)(B).

19. Cpt. ¶ 63.

20. *Id.*

21. *Id.*

22. *E.g., CFTC v. Hanover Trading Corp.,* 34 F.Supp.2d 203, 205 (S.D.N.Y.1999).

23. *Id.* (quoting *CFTC v. Co Petrol Mktg. Group, Inc.,* 680 F.2d 573, 580 (9th Cir.1982)) (citations omitted).

The parties disagree as to whether the allegations of the complaint are sufficient to permit plaintiffs to establish that the contracts at issue here were futures contracts. But it is unnecessary to resolve that issue in light of FXCM's alternative argument.

■ The contracts at issue here, whether spot or future, were for foreign currency. The complaint specifically alleges that they were off-exchange contracts.[24] And this is fatal to plaintiffs' CEA claims against FXCM.

Until December 2000, trading in foreign currencies was exempt from the CEA unless conducted on an exchange.[25] Congress then enacted the Commodity Futures Modernization Act of 2000, which established limited CEA jurisdiction over off-exchange retail foreign currency trading.[26] Off-exchange retail foreign currency contracts offered by FCMs such as FXCM are generally exempt even from that limited jurisdiction[27] although they are subject to certain specific provisions of the Act.[28] Plaintiffs' problem, however, is that the sections of the CEA upon which they rely for their CEA claims against FXCM—Sections 2(a) and 13b[29]—are not among them. Accordingly, the CEA claims against FXCM, Counts XVI and XVII, must be dismissed.

## B. Diversity of Citizenship

If there were an independent basis of federal jurisdiction over the array of state law claims plaintiffs assert against FXCM, the dismissal of the CEA claims would not alone be fatal. But despite plaintiffs' claim of diversity or, more properly, alienage jurisdiction, there is not. Indeed, there are numerous flaws in the jurisdictional allegations.

■ To begin with, the complaint does not allege the citizenship of four of the five individual defendants or any of the limited liability company defendants. The allegations of the residences of the individuals—and there is not even that as to one of them—are not equivalent to allegations of citizenship and therefore are insufficient.[30] Likewise, the complaint's assumption that the citizenship of a limited liability company is analogous to that of a corporation is incorrect. A limited liability company is a citizen of every state of which any of its members is a citizen,[31] and the complaint fails to allege the citizenship of the members. And while at least some of these deficiencies conceivably might be cured by amendment, there is a much more basic obstacle to Section 1332[32] jurisdiction here.

■ All of the plaintiffs and defendant Prevoo are alleged to be citizens of Peru.

---

**24.** Cpt. ¶ 62.

**25.** *See generally Dunn v. CFTC*, 519 U.S. 465, 117 S.Ct. 913, 137 L.Ed.2d 93 (1997).

**26.** 7 U.S.C. § 2(c)(1) provides that nothing in the Act "governs or applies to an agreement, contract, or transaction in—(A) foreign currency" except as set forth in § 2(c)(2).

**27.** *Id.* § 2(c)(2)(B)(II).

**28.** *Id.* § 2(c)(2)(C).

**29.** *Id.* §§ 2(a), 13c(b).

**30.** *See, e.g., Sun Printing & Publ'g Ass'n v. Edwards*, 194 U.S. 377, 382, 24 S.Ct. 696, 48 L.Ed. 1027 (1904); *Leveraged Leasing Admin.*

*Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 47 (2d Cir.1996); *Depradine v. Nissan Infiniti LT*, No. 00 Civ. 6686(LAK), 2000 WL 1280971, at *1 (S.D.N.Y. Sept. 11, 2000).

**31.** *E.g., Handelsman v. Bedford Village Associates LLC*, 213 F.3d 48, 51 (2d Cir.2000); *Mackason v. Diamond Fin. LLC*, 347 F.Supp.2d 53, 55 (S.D.N.Y.2004); *Ferrara Bakery & Cafe, Inc. v. Colavita Pasta & Olive Oil Corp.*, No. 98 Civ. 4344(LAP), 1999 WL 135234, at *2 (S.D.N.Y. Mar. 12, 1999).

**32.** 28 U.S.C. § 1332.

Alienage jurisdiction does not extend to cases in which aliens are both a plaintiff and a defendant.[33] Nor, contrary to plaintiffs' apparent view, may jurisdiction be premised on Section 1332(a)(3) of the Judicial Code,[34] which grants jurisdiction over suits involving the requisite amount in controversy between "citizens of different States and in which citizens or subjects of a foreign state are additional parties ..." Here there is no dispute between citizens of different states. All of the parties who are citizens of states are defendants; the plaintiffs all are Peruvian citizens. The allegation that Prevoo resides in New Jersey and "[a]ccordingly ... is a 'citizen' of New Jersey" is incorrect—residence, especially of an alien, does not make one a citizen of a state for diversity purposes.[35] Indeed, only "an alien admitted to the United States for permanent residence" may be deemed a citizen of a state and even then the state of which the alien is a citizen is that of the alien's domicile, not mere residence.[36] Accordingly, there is no independent basis of federal subject matter jurisdiction.

## C. Supplemental Jurisdiction

The complaint alleges that jurisdiction is founded not only on the presence of claims under the CEA and diversity, but also "principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a)." [37] This notwithstanding, plaintiffs have not addressed the issue whether the Court has supplemental jurisdiction over their claims against FXCM if, as the Court has concluded, their CEA claims are deficient and alienage jurisdiction is lacking.

Section 1367(a) codifies the rule of *United Mine Workers v. Gibbs*.[38] A court thus usually has the power to exercise supplemental jurisdiction over state claims if they derive from "a ... nucleus of operative fact" common to the jurisdiction-conferring claim and if they "are such that [the claimant] would ordinarily be expected to try them all in one judicial proceeding." [39]

■ Here, the federal claims against the Alleged Primary Violators concern their alleged perpetration of the fraud in violation of the CEA. The aiding and abetting claims [40] against FXCM relate to its alleged assistance of this fraud. In order to establish their aiding and abetting claims, plaintiffs will need to show, among other things, a primary violation of the CEA by the Alleged Primary Violators.[41] The aiding and abetting claims therefore share a common nucleus of operative facts with the federal claims against the Alleged

---

33. *Int'l Shipping Co. v. Hydra Offshore, Inc.,* 875 F.2d 388, 391 (2d Cir.), *cert. denied, Golub v. Hydra Offshore, Inc.,* 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989); *Corporacion Venezolana de Fomento v. Vintero Sales Corp.,* 629 F.2d 786, 790 (2d Cir.1980) ("[T]he presence of aliens on two sides of a case destroys diversity jurisdiction."), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981); *IIT v. Vencap Ltd.,* 519 F.2d 1001, 1015 (2d Cir.1975).

34. 28 U.S.C. § 1332(a)(3).

35. *E.g.,* 13B CHARLES A. WRIGHT, ARTHUR R. MILLER AND EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D § 3602, at 366

(1984) ("Nor is it possible for an alien to be a citizen of a state for diversity purposes.").

36. *See id.* § 1332(a).

37. Cpt. ¶ 28.

38. 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

39. *Id.* at 725, 86 S.Ct. 1130.

40. Counts V (aiding and abetting fraud) and VII (aiding and abetting breach of fiduciary duty).

41. *E.g., Lesavoy v. Lane,* 304 F.Supp.2d 520, 526–27 (S.D.N.Y.2004).

Primary Violators. Accordingly, supplemental jurisdiction—in the sense of power to decide—over the aiding and abetting claims is proper.

The remaining state law claims against FXCM—unjust enrichment, breach of fiduciary duty, breach of contract, negligence, and conversion[42]—stand differently. The nub of these claims is that FXCM did not provide its services "in a proper, skillful, prudent and diligent manner" and failed to "exercise the degree of care, skill, prudence, and diligence which is commonly possessed and exercised by professionals competent in the field."[43] Among other things, FXCM allegedly failed to provide accounts statements,[44] operate adequately its website,[45] and detect that certain documents it received had been forged.[46] Section 1367(c) permits the Court to decline supplemental jurisdiction where the non-federal claims "substantially predominate[ ] over the . . . claims over which the district court has original jurisdiction."[47] Even assuming *arguendo* that the remaining state law claims against FXCM arise from the same case or controversy as the claims against the Alleged Primary Violators, the facts peculiar to FXCM—which include the details of its direct relationship with each plaintiff—substantially predominate over common issues. The Court therefore declines to exercise supplemental jurisdiction over these claims. Accordingly, except for the aiding and abetting claims, the state law claims are dismissed for lack of subject matter jurisdiction.

## D. Aiding and Abetting Claims

In order to recover on an aiding and abetting theory, plaintiffs will be obliged to establish that (1) Prevoo and others committed a primary violation—i.e., that they defrauded plaintiffs or breached fiduciary duties owed to them, (2) FXCM knew of the primary violation, and (3) FXCM lent substantial assistance to the primary violators in committing the primary violation.[48]

■ The primary violations upon which the aiding and abetting claims are based sound in fraud and are subject to the requirement of Rule 9(b) that fraud be pleaded with particularity.[49] Rule 9(b) applies also to claims of aiding and abetting fraud.[50] In order to state a claim, plaintiffs therefore were obliged to allege with particularity, among other things, "facts that give rise to a strong inference of fraudulent intent."[51] This may be done "either (a) by alleging facts that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that

---

42. Counts VI, VII, IX, XI, and XIII, respectively.

43. Cpt. ¶ 305 (breach of contract); *see also id.* ¶¶ 278 (unjust enrichment), 282 (breach of fiduciary duty), 285 (same), 312–14 (negligence), 324–25 (conversion).

44. *Id.* ¶¶ 59, 73.

45. *Id.* ¶ 60.

46. *Id.* ¶¶ 81, 124, 132, 153, 191, 215.

47. 28 U.S.C. § 1367(c)(2).

48. *E.g., Lesavoy,* 304 F.Supp.2d at 526–27.

49. While breaches of fiduciary duty do not always involve actual fraud, the breach of fiduciary duty claim in this case incorporates all of plaintiffs' fraud allegations and adds an additional claim that the defendants breached their duties by "fraudulently causing Plaintiffs to enter into each of the transactions described in this Complaint." Cpt. ¶¶ 281, 284. Accordingly, Rule 9(b) applies also to the aiding and abetting claim. *See Rombach v. Chang,* 355 F.3d 164, 170 (2d Cir.2004).

50. *E.g., Armstrong v. McAlpin,* 699 F.2d 79, 92 (2d Cir.1983).

51. *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.,* 375 F.3d 168, 187 (2d Cir. 2004) (quoting *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir.1995)).

constitute strong circumstantial evidence of conscious misbehavior or recklessness."[52]

■ Here, the complaint alleges in conclusory terms that FXCM "participated with actual knowledge that the purpose of the transactions were [*sic*] to manipulate Plaintiffs' assets."[53] This falls far short of the requirements under Rule 9(b). The complaint's specific allegations concerning FXCM are very sparse indeed. To the extent they might be relevant to the issue of *scienter*, they are principally that it failed to provide account statements to plaintiffs,[54] knew that FXEM illegally prepared some account statements,[55] erroneously released funds from the Copernic account to the personal account of Copernic's "representative" plaintiff Krause,[56] and failed to detect Prevoo's alleged forgery of documents submitted on behalf of certain plaintiffs.[57] The only point among these that suggests awareness of any misconduct by the principal defendants is the claim that FXCM knew that FXEM illegally prepared account statements, and no factual basis is given for this assertion. This is not sufficient. Accordingly, the aiding and abetting claims against FXCM are dismissed.

## II. FXCM's Motion to Dismiss the First Cross–Claim

Prevoo and FXEM cross-claim against FXCM, asserting that it contributed to plaintiffs' alleged injuries by breaching duties it independently owed to plaintiffs and that FXEM therefore is entitled to contribution. FXCM seeks dismissal on the ground that it breached no duties to plaintiffs and, in any case, that any duties it breached were contractual in nature and therefore not a basis for a claim of contribution.[58] As the duties allegedly breached are only those identified by plaintiffs in the complaint, it is necessary to review the complaint's claims against FXCM.

FXCM is named as a defendant in ten counts of the complaint. The CEA claims[59] already have been dismissed and are not part of the equation. Two more "counts" pertain only to remedies and are not properly claims for relief but parts of the prayer.[60] They too may be disregarded. The aiding and abetting claims likewise were dismissed, and the cross-claimants have alleged no additional facts showing *scienter*. What remains, therefore, are claims for unjust enrichment, breach of fiduciary duty, breach of contract, negligence and conversion.[61]

■ The contract claim asserts that FXCM failed to perform its services "in a proper, skillful, prudent and diligent manner, and to exercise the degree of care, skill, prudence and diligence which is commonly possessed and exercised by professionals competent in the field."[62] The rest of plaintiffs' claims against it are different

---

52. *Acito,* 47 F.3d at 52; *see also Kalnit v. Eichler,* 264 F.3d 131, 139 (2d Cir.2001); *Ganino v. Citizens Utils. Co.,* 228 F.3d 154, 169–70 (2d Cir.2000); *Rothman v. Gregor,* 220 F.3d 81, 90 (2d Cir.2000).

53. Cpt. ¶ 273.

54. *Id.* ¶¶ 59, 73.

55. *Id.* ¶ 73.

56. *Id.* ¶¶ 145, 154.

57. *Id.* ¶¶ 81, 124, 132, 153, 191, 215.

58. Prevoo Ans. at 26.

59. Counts XVI and XVII.

60. Counts XIX and XX seek damages and an accounting, respectively, for the previously alleged claims.

61. Counts VI, VII, IX, XI and XIII, respectively.

62. Cpt. ¶ 298.

ways of saying the same thing.[63] In consequence, there is a basic problem with the contribution claim insofar as it rests on these assertions by the plaintiffs. "New York law does not permit a party to seek contribution when the underlying liability is for breach of contract." [64]

### Conclusion

For the foregoing reasons, the motion of defendant Forex Capital Markets, LLC to dismiss the complaint and the first cross-claim is granted. Inasmuch as the Court has ancillary jurisdiction over the cross-claim, and it may be possible for the cross-claimant to remedy its deficiencies, the dismissal of the cross-claim is with leave to serve and file, no later than February 24, 2005, an amended cross-claim.

SO ORDERED.

---

**63.** *Id.* ¶¶ 278 (unjust enrichment), 282 (breach of fiduciary duty claim), 285 (same), 312–14 (negligence), 324–25 (conversion).

The breach of fiduciary duty claim goes beyond assertions that FXCM failed properly to manage plaintiffs' accounts to allege fraudulent misrepresentations. *Id.* ¶ 284. But these allegations may be disregarded because they fail to meet the most basic requirements of Rule 9(b)—that the plaintiffs "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Novak v. Kasaks,* 216 F.3d 300, 306 (2d Cir.2000) (quoting *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994)).

**64.** *General Conf. of Seventh–Day Adventists (Risk Mgmt. Svcs.) v. AON Reins. Agency, Inc.,* 860 F.Supp. 983, 989 (S.D.N.Y.1994), *aff'd,* 50 F.3d 2 (2d Cir.1995). *Accord, Bd. of Educ. v. Sargent, Webster, Crenshaw & Folley,* 71 N.Y.2d 21, 29, 523 N.Y.S.2d 475, 478, 517 N.E.2d 1360 (1987) (denying contribution because there was "no legal duty independent of appellant's contractual obligations"); *Morse/Diesel, Inc. v. Trinity Ind., Inc.,* 859 F.2d 242, 250 (2d Cir.1988) ("[m]erely charging a breach of a 'duty of care', employing language familiar to tort law, does not, wihtout more, transform a simple breach of contract into a tort claim") (citation omitted).