358 F.Supp.2d 336 (2005)
In re: NATURAL GAS COMMODITY LITIGATION
No. 03 Civ. 6186(VM).
United States District Court, S.D. New York.
February 25, 2005.
Bernard Persky, Craig L. Briskin, Vaishali Shetty, Goodkind, Labaton Rudoff & Sucharow, LLP, New York, NY, for Cornerstone Propane Partners, L.P., Dominick Viola, Jr.
Christopher J. Gray, Law Office of Christopher J. Gray, P.C., New York, NY, Christopher Lovell, Lovell, Stewart, Halebian, L.L.P., New York, NY, Gary S. Jacobson, *337 Lovell & Stewart, L.L.P., New York, NY, Louis F. Burke, Louis F. Burke, P.C., New York, NY, Bernard Persky, Craig L. Briskin, Vaishali Shetty, Goodkind, Labaton Rudoff & Sucharow, LLP, New York, NY, for Roberto E. Calle Gracey.
Gregory Copeland, Holly Roberts, J. Michael Baldwin, James Hail, Mark Robeck, Baker Botts, L.L.P., Houston, TX, Paul Anthony Ragsua, Baker Botts LLP, New York, NY, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York, NY, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York, NY, for Reliant Energy Services, Inc.
Blossom Kan, John L. Hendricks, Orrin L. Harrison, III, Akin Gump Strauss Hauer & Feld LLP, New York, NY, for Centerpoint Energy Houston Electric, L.L.C.
J. Michael Baldwin, Baker Botts, L.L.P., Houston, TX, Mark R. Hellerer, Pillsbury Winthrop LLP, New York, NY, Michael J. Kass, Pillsbury & Winthrop LLP, San Francisco, CA, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York, NY, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York, NY, for Dynegy Marketing and Trade.
Mark R. Hellerer, Pillsbury Winthrop LLP, New York, NY, Michael J. Kass, Pillsbury & Winthrop LLP, San Francisco, CA, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, for Dygeny Holdings, Inc., Dygeny, Inc.
J. Michael Baldwin, Baker Botts, L.L.P., Houston, TX, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York, NY, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York, NY, for Aquila Energy Marketing Corp., Aquila Merchant Service, Inc., Does 1-100.
J. Michael Baldwin, Baker Botts, L.L.P., Houston, TX, Steven J. Routh, Hogan & Hartson, L.L.P., Washington, DC, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York, NY, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York, NY, for AEP Energy Service, American Electric Power Co., Inc.
J. Michael Baldwin, Baker Botts, L.L.P., Houston, TX, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York, NY, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York, NY, Stephanie J. Goldstein, Fried, Frank, Harris, Shriver & Jacobson, New York, NY, for El Paso Merchant Energy, L.P., El Paso Corp.
J. Michael Baldwin, Baker Botts, L.L.P., Houston, TX, Jeffrey M. Shohet, Mark H. Hamer, Noah A. Katsell, DLA Piper Rudnick Gray Cary US LLP, San Diego, CA, Stanley J. Panikowski, Gray Cary Ware & Freidenrich LLP, San Diego, CA, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York, NY, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York, NY, for Williams Energy Marketing and Trading Co., Williams Companies, Inc.
Peter Joseph Kadzik, Dickstein, Shapiro, Morin & Oshinsky, L.L.P., Washington, DC, for Duke Energy Corp.
Banks Brown, Patrick S. Sinclair, Robert E. Rice, McDermott, Will & Emery, New York, NY, J. Michael Baldwin, Baker Botts, L.L.P., Houston, TX, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York, NY, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, *338 L.L.P., New York, NY, for CMS Energy Corp.
Melvin Arnold Brosterman, Stroock & Stroock & Lavan, LLP, New York, NY, for Sempra Energy.
Richard P. Swanson, Thelen, Reid & Priest, L.L.P., New York, NY, for Enserco Energy, Inc.
J. Michael Baldwin, Baker Botts, L.L.P., Houston, TX, Robert A. Sacks, Sullivan & Cromwell, Los Angeles, CA, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York, NY, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York, NY, for WD Energy Services, Encana Corp.
J. Michael Baldwin, Baker Botts, L.L.P., Houston, TX, Jill Diane Fairbrother, Sullivan and Cromwell LLP, New York, NY, Kenneth M. Raisler, Sullivan & Cromwell, L.L.P., New York, NY, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York, NY, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York, NY, for Energy-Koch Trading, L.P.
J. Michael Baldwin, Baker Botts, L.L.P., Houston, TX, Kenneth Conboy, Latham and Watkins, L.L.P., New York, NY, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York, NY, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York, NY, for Koch Industries Inc.
J. Michael Baldwin, Baker Botts, L.L.P., Houston, TX, Mary Anne Sullivan, William H. Johnson, Hogan and Hartson, L.L.P., Washington, DC, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York, NY, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York, NY, for Cook Inlet Energy Supply, L.L.C.
Mary Anne Sullivan, William H. Johnson, Hogan and Hartson, L.L.P., Washington, DC, for Cook Inlet Region, Inc., Inupiat Energy Corp.
J. Michael Baldwin, Baker Botts, L.L.P., Houston, TX, Robert A. Jaffe, Kutak, Rock, L.L.P., New York, NY, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York, NY, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York, NY, for Midamerican Energy Co.
J. Michael Baldwin, Baker Botts, L.L.P., Houston, TX, Richard T. Marooney, Jr., King & Spalding LLP, New York, NY, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York, NY, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York, NY, for MIECO, Inc.
David G. Hetzel, Leboeuf, Lamb, Greene & Macrae, LLP, New York, NY, Dennis Kerrigan, Jr., Leboeuf, Lamb, Greene & Macrae, LLP, Hartford, CT, for Idaho Power Co., Idacorp., Inc.
J. Michael Baldwin, Baker Botts, L.L.P., Houston, TX, Patrick M. McGuirk, Sidley Austin Brown & Wood LLP, New York, NY, Steven M. Bierman, Sidley, Austin, Brown & Woods, New York, NY, Thomas K. Cauley, Chicago, IL, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York, NY, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York, NY, for Cinergy Services, Inc., Cinergy Corp.
Michael J. Kass, Pillsbury & Winthrop LLP, San Francisco, CA, for West Coast Power, LLC.
Steven M. Bierman, Sidley, Austin, Brown & Wood, New York, NY, for Cinergy Marketing & Trading LP.
*339 J. Michael Baldwin, Baker Botts, L.L.P., Houston, TX, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York, NY, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York, NY, Peter J. Kadzik, Dickstein, Shapiro, Morin & Oshinsky LLP, Washington, DC, for Duke Energy Trading and Marketing, L.L.C.
Felice Beth Galant, Robert D. Owen, Fulbright & Jaworski L.L.P., New York, NY, J. Michael Baldwin, Baker Botts, L.L.P., Houston, TX, Diana L. Weiss, Orrick, herrington & Sutcliffe LLP, New York, NY, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Artson, L.L.P., New York, NY, for Coral Energy Holding, L.P., Coral Energy Reources L.P.
J. Michael Baldwin, Baker Botts, L.L.P., Houston, TX, Diana L. Weiss, Orrick, Herrington & Sutcliffe LLP, New York, NY, Douglas R. Tribble, Pillsbury Winthrop LLP, San Diego, CA, Jonathan L. Abram, Hogan & Hartson, L.L.P., New York, NY, for John Does 1-100.
Richard P. Swanson, Thelen, Reid & Priest, L.L.P., New York, NY, for Calpine Energy Services, L.P.
Robert C. Micheletto, Jones Day, New York, NY, for E Prime, Inc.
Karen Michele Crupi-Fritzgerald, Heller Ehrman White & McAuliffe LLP, New York, NY, for Oneok Energy Marketing and Trading Co., L.P., Oneok, Inc.
Jerome S. Hirsch, Skadden, Arps, Slate, Meagher & Flom, Washington, DC, Peter E. Greene, Skadden, Arps, Slate, Meagher & Flom, L.L.P., New York, NY, Peter S. Julian, Skadden, Arps, Slate, Meager & Flome, New York, NY, for Western Gas Resources, Inc.
Alia Lyerly Smith, Levine, Sullivan, Koch & Schulz, LLO, New York, NY, Nathan Siegel, Levine, Sullivan Koch & Schulz, L.L.P., New York, NY, for Intelligence Press.
Matthew A. Leish, Victor A Kovner, Davis Wright Tremaine LLP, New York, NY, for McGraw-Hill Companies.

DECISION AND ORDER
MARRERO, District Judge.
By motion dated November 23, 2004 (the "Motion"), Western Gas Resources, Inc. ("Western"), has sought dismissal of the Amended Class Action Complaint dated September 22, 2004 ("Amended Complaint") filed against it by Roberto Calle Gracey and Dominick Viola (collectively, "Plaintiffs"), on behalf of themselves and others similarly situated.[1] Western argues that the heightened pleading requirements of Fed.R.Civ.P. 9(b) apply to claims asserted against it under the manipulation and aiding and abetting provisions of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 1 et seq. It further asserts that the Complaint fails to comply with the pleading requirements of Rule 9(b), and should thus be dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. In the alternative, Western has moved to require Plaintiffs to provide it with a more definite statement of their claims under Fed.R.Civ.P. 12(e), specifying which specific trades or practices they allege were manipulative.
While the Court agrees with Western that the requirements of Rule 9(b) apply to the allegations against it contained in the Amended Complaint, it finds that Plaintiffs' allegations against Western are pled *340 with sufficient particularity, and thus are not subject to dismissal for failure to comply with Rule 9(b). The Court further finds that, because the Amended Complaint is sufficiently detailed to enable Western to respond to it in good faith and effectively prepare its defense, Western's motion for a more definite statement must also be denied.

I. BACKGROUND

The Court has already issued a lengthy opinion adjudicating numerous motions to dismiss filed by other defendants in this consolidated action.[2]See In re Natural Gas Commodity Litig., 337 F.Supp.2d 498 (S.D.N.Y.2004) (hereinafter, "Natural Gas I"). That opinion describes the events leading to the filing of class action complaints by Plaintiffs, on behalf of a putative class of traders of natural gas futures contracts on the New York Mercantile Exchange ("NYMEX"), against several companies that market and trade natural gas in the physical and futures markets. Familiarity with that prior opinion is assumed.
Like many of the other defendants sued by Plaintiffs in this action, Western is a corporation that produces, gathers, processes and transports natural gas. The company also buys and sells natural gas products in the wholesale market throughout the United States and Canada, and reports information related to the price and volume of sales to various trade publications, including a publication called Gas Daily. Also like other defendants, Western has been the target of administrative proceedings instituted by federal regulators who investigated the manipulation of the natural gas market by gas companies, in part through false reporting of trade data to industry publications such as Gas Daily. See Natural Gas I, 337 F.Supp.2d at 503 (citing and discussing reports by the Federal Energy Regulatory Commission ("FERC") and the Commodity Futures Trading Commission ("CFTC") that found significant manipulation of the natural gas market by gas companies, in part through false reporting of trade data). In July of 2004, Western entered into a settlement agreement with the CFTC in which it agreed to the entry of an order requiring it to pay $7 million in fines and finding that Western had reported false information, including price and volume information, to Gas Daily "in an attempt to manipulate the price of natural gas by skewing the published indices." Press Release, CFTC, U.S. Commodity Futures Trading Commission Imposes $7 Million Civil Penalty on Energy Firm (July 1, 2004), available at http://www.cftc.gov/opa/enf04/opa4948-04.htm (hereinafter, "CFTC Press Release"); see also In re Western Gas Resources, Inc., CFTC Docket No. 04-17 (July 1, 2004), available at http:// www.cftc.gov/files/enf/04orders/enfwgr-order.pdf (hereinafter, "CFTC Order") (order instituting proceedings pursuant to CEA Sections 6(c) and 6(d), making findings, and imposing remedial sanctions on Western).[3]
*341 According to the CFTC Order, from June 1999 through February 2001, Western, through two traders on its Texas trading desk, "knowingly reported false price and/or volume information concerning natural gas cash transactions to Gas Daily" in an attempt to manipulate the price of natural gas. Id. at 2-3. These reports contained false price and/or volume information, fabricated trades, and other false submissions. Id. at 4. According to the CFTC, from March 2001 through December 2002, Western "knowingly reported false or misleading price and/or volume information concerning natural gas cash transactions to Gas Daily in that its traders knowingly delivered reports of transactions observed in the market and represented those trades as Western's actual trades." CFTC Order at 2.
Plaintiffs' Amended Complaint copies the language of the CFTC Order almost verbatim but alleges further that the market manipulation the CFTC found Western to have attempted was actually effectuated by the company. Paragraphs 146 through 151 of the Amended Complaint, citing to the CFTC materials, repeat the CFTC's findings that Western submitted false trade data between June 1999 through December 2002 and note that Western agreed to a $7 million settlement of the CFTC's charges against it. (See Amended Complaint ¶¶ 146-151.) Paragraph 152 of the Amended Complaint, however, goes further than the CFTC by alleging that Western Gas actually manipulated the natural gas market through its submission of false price information during that period. (See id. ¶ 152 ("Western Gas manipulated the natural gas market by manipulating natural gas spot prices and NYMEX natural gas futures prices from on or about June 1, 1999 to December 31, 2002 by falsely reporting natural gas price and volume information to the various [companies that compile price] indices.").)
The Amended Complaint seeks to bolster the allegation that Western actually accomplished, rather than merely attempted, market manipulation by asserting that it, along with other defendant natural gas companies, was a major participant in the natural gas market who "had the ability through its reporting of physical natural gas transactions to influence the price of NYMEX natural gas futures." (Id. ¶ 45.) By submitting false pricing data to Gas Daily and other publications, Western allegedly used its ability to influence prices in order to manipulate the gas futures market. (See id. ¶ 40.) According to Plaintiffs, Western and other defendants knew at the time they submitted the false pricing data that the information would be used to calculate published pricing indices, and would ultimately affect pricing of gas futures, and that Western thus intended to manipulate the gas futures market through its submission of false trade data. (See id. ¶ 47.)
On the basis of these allegations, Plaintiffs have charged Western with manipulation of the natural gas commodities market, in violation of Sections 9(a) and 22(a) of the CEA, 7 U.S.C. §§ 13(a), 25(a), as well as with aiding and abetting others' violations of the CEA, in violation of Section 22(a)(1) of the CEA, 7 U.S.C. § 25(a)(1). Western has now moved to dismiss these allegations, or in the alternative, to require Plaintiffs to submit a more definite statement of the nature of claims against it.

II. DISCUSSION

A. STANDARD OF REVIEW
As discussed in Natural Gas I, when considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court may grant a motion to dismiss only if "it appears beyond doubt that the plaintiffs can prove no set of facts in support of his claim *342 which would entitle him to relief." Natural Gas I, 337 F.Supp.2d at 505-06 (quoting Krimstock v. Kelly, 306 F.3d 40, 48 (2d Cir.2002) (bracketed text omitted)). The Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party. Id. at 505 (citing Securities Investor Protection Corp. v. BDO Seidman, LLP, 222 F.3d 63, 68 (2d Cir.2000)).
B. RULE 9(B)
1. Rule 9(b) Applies to Plaintiffs' Claims
Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). In Natural Gas I, the Court had no occasion to consider the argument that CEA manipulation claims must comply with Rule 9(b) because no defendant had raised that argument. See Natural Gas I, 337 F.Supp.2d at 509 (indicating that defendants "do not argue that the manipulation claim under § 9(a) of the CEA should be subject to that heightened standard" imposed by Rule 9(b)). It noted in dicta, however, that "no court has required a plaintiff to plead a claim for manipulation under CEA § 9(a) with the same particularity that Fed.R.Civ.P. 9(b) requires of claims charging fraud," and suggested that the CEA's separate statutory bases for claims of fraud and manipulation might lie behind that distinction. See id.; 7 U.S.C. §§ 6b (CEA fraud), 13 & 13b (CEA manipulation). The Court also noted in dicta, however, that "[s]ome courts have likened manipulation to fraud." Natural Gas I, 337 F.Supp.2d at 509 (citing Slusser v. CFTC, 210 F.3d 783, 786 (7th Cir.2000)).
Western argues directly that Rule 9(b)'s requirements apply to Plaintiffs' CEA manipulation and aiding and abetting claims, thus requiring the Court to examine whether or when allegations of market manipulation under the CEA must comply with the requirements of Rule 9(b). Western relies on a recent Second Circuit decision, Rombach v. Chang, 355 F.3d 164 (2d Cir.2004), to support its argument. In Rombach, the plaintiffs' complaint alleging violations of various federal securities laws, including Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, was dismissed by the district court for failure to comply with Rule 9(b), even though Section 11 claims do not require proof of fraud to establish a defendant's liability. The Second Circuit affirmed, concluding first that "the heightened pleading standard of Rule 9(b) applies to Section 11 ... claims insofar as the claims are premised on allegations of fraud." Id. at 171. Next, the court found that, although the plaintiffs asserted that their Section 11 claims "do[] not sound in fraud," they could not avoid complying with Rule 9(b)'s requirements because "the wording and imputations of the complaint are classically associated with fraud." Id. at 172. For example, the plaintiffs alleged that statements issued by the defendants were "inaccurate and misleading," and contained "untrue statements of material facts." Id. Finally, the Circuit Court found that the complaint failed to meet the requirements of Rule 9(b) because it did not "state with particularity the specific facts in support of [plaintiffs'] belief that [defendants'] statements were false when made." Id.
According to Western, the Amended Complaint's CEA manipulation allegations sound in fraud, even if fraud does not have to be proven in order to establish liability under that statute. (See Memorandum of Law in Support of Defendant Western Gas Resources' Motion to Dismiss or, in the Alternative, for a More Definite Statement, dated Nov. 23, 2004 (hereinafter, "Western Mem. of Law") at 16-18.) Western *343 argues that therefore, under the rule articulated in Rombach, Plaintiffs must comply with the requirements of Rule 9(b), which Rombach stated more generally as requiring that a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Id. at 170 (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir.1993)).
The Court agrees with Western that the alleged manipulative scheme described in the Amended Complaint sounds in fraud and must comply with the requirements of Rule 9(b). Even though the Amended Complaint does not allege fraud under the CEA, it alleges a scheme that is "classically associated with fraud": the dissemination of "inaccurate, misleading, and false trading information," and participation in "a variety of fraudulent trade reporting strategies whose purpose was to create the precention of increased liquidity and demand for natural gas, and thus to manipulate the spot prices of natural gas." (Amended Complaint ¶ 2 (emphasis added).) Plaintiffs' aiding and abetting allegations similarly allege fraudulent trade data reporting strategies in an effort to assist other defendants' manipulation of gas prices. (See id. ¶ 178.) While Plaintiffs argue that Rombach does not apply to allegations of manipulation or aiding and abetting manipulation under the CEA (see Plaintiffs' Memorandum of Law in Opposition to Motion of Defendant Western Gas Resources to Dismiss or, in the Alternative, for a More Definite Statement, dated Dec. 22, 2004 (hereinafter, "Plaintiffs' Mem. of Law") at 12-13), the Court sees no basis on which the rule articulated in Rombach can be limited to cases alleging securities fraud. Rather, in this Court's reading, Rombach stands for the proposition that a complaint that sounds in fraud must comply with Rule 9(b)'s requirements even if the complaint does not allege a cause of action requiring proof of fraud.[4]
The Court concludes, however, that Plaintiffs must satisfy the flexible Rule 9(b) standard that other courts in this District have found applicable to market manipulation claims, rather than the more generic standard applicable to allegations of fraudulent statements that was articulated by Mills and echoed by Rombach, in order to avoid dismissal. As the court indicated in SEC v. U.S. Environmental, 82 F.Supp.2d 237 (S.D.N.Y.2000), the Mills standard
is inappropriate ... in the context of market manipulation, as such claims do not necessarily involve affirmative misrepresentations. Accordingly, to require slavish satisfaction of these judicially-fashioned elements would make plaintiff's task impossible in many cases. Although the Second Circuit has not specifically ruled on this question, other courts in this District have fashioned a separate, relaxed pleading standard for market manipulation claims under § 10(b) and Rule 10b-5. To satisfy Rule 9(b), a market manipulation claim must specify "`what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue.' "
Id. at 240 (quoting T.H.C., Inc. v. Fortune Petroleum Corp., 1999 WL 182593 at *3 (S.D.N.Y. Mar.31, 1999)); see also Endovasc *344 Ltd., Inc. v. J.P. Turner & Co., LLC, No. 02 Civ. 7313, 2004 WL 634171, at *5 (S.D.N.Y. Mar. 30, 2004) (noting that the pleading standards applicable to market manipulation claims "are somewhat `relaxed'").[5]
2. The Amended Complaint Complies with the Requirements of Rule 9(b)
Plaintiffs have more than adequately complied with the standard applicable to market manipulation claims under Rule 9(b). With respect to the claim that Western was a primary violator of CEA § 9(b), Plaintiffs have specified "what manipulative acts were performed" by alleging in detail in the Amended Complaint itself that Western manipulated the natural gas market by reporting false pricing data to various market indices, which resulted in distortions in spot prices and NYMEX natural gas futures prices.[6] (See Amended Complaint ¶ 152.) They have specified which defendants performed the manipulative acts, and when those acts were performed, by repeating the findings in the the CFTC Order, which found that two traders employed by Western knowingly reported false pricing and volume information to a trade publication at the direction of a supervisor from June 1999 to February 2001, and that four Western traders knowingly delivered false reports of transactions to trade publications between *345 March 2001 and December 2002.[7] (See id. ¶¶ 148-49.) Finally, Plaintiffs have alleged the "effect the scheme had on the market for the securities at issue," U.S. Environmental, 82 F.Supp.2d at 240, by alleging that the false trade reports skewed published price indices, which "are widely used and relied on by NYMEX natural gas futures traders to determine the price at which they will buy or sell NYMEX natural gas futures," and which "have a financial impact upon billions of dollars worth of natural gas transactions." (Amended Complaint ¶ 40 (internal citations and quotation marks omitted).) As described above, the Amended Complaint further alleges that Western and others, as major participants in the market for natural gas, had the power to influence the price of NYMEX natural gas futures through its false reporting of pricing data. (See id. ¶ 45.)
The aiding and abetting claims also comply with the requirements of Rule 9(b). Plaintiffs' aiding and abetting count incorporates by reference all of the preceding allegations contained in the Amended Complaint, and further alleges that, via the conduct described earlier, Western and other defendants "knowingly aided, abetted, counseled, induced, and/or procured the violations of the CEA alleged herein." (Amended Complaint ¶¶ 177-78.) Drawing logical inferences in favor of Plaintiffs, as the Court is required to do when reviewing the sufficiency of a complaint on a Rule 12(b)(6) motion to dismiss, it becomes clear that Plaintiffs are seeking to allege that, even if the false reporting and other conduct described above did not directly cause the manipulation of the natural gas futures market, it aided and abetted others' efforts to manipulate the market for natural gas. These allegations are sufficient to satisfy the requirements of Rule 9(b).
C. MOTION FOR A MORE DEFINITE STATEMENT
Fed.R.Civ.P. 12(e) provides in relevant part:
If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably *346 be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired.
Western argues that the Amended Complaint's lack of detail concerning the allegations against it render it unable to frame a responsive pleading in this action. (See Western Mem. of Law at 23-25.) But the purpose of Rule 12(e) is to "strike at unintelligibility rather than want of detail.... [A]llegations that are unclear due to lack of specificity are more appropriately clarified by discovery." In re Terrorist Attacks on September 11, 2001, 349 F.Supp.2d 765, 822 (S.D.N.Y.2005) (quoting Asip v. Nielsen Media Research, No. 03 Civ. 5866(SAS), 2004 WL 315269, at *2 (S.D.N.Y. Feb. 18, 2004)). Because the Amended Complaint is extensive, intelligible, and well-supported by regulatory reports, and because any ambiguities that remain in the Amended Complaint may be appropriately addressed by discovery, Western's motion for a more definite statement under Rule 12(e) is denied.

III. ORDER

For the reasons discussed above, it is hereby:
ORDERED that the motion of defendant Western Gas Resources, Inc., to dismiss the Amended Class Action Complaint herein, or, in the alternative, for a more definite statement, is denied.
SO ORDERED.
NOTES
[1] The Amended Complaint also names Hunter Shively ("Shively") as a defendant. By notice dated December 23, 2004 and memo endorsed on January 3, 2005, Shively was voluntarily dismissed from the action.
[2] The Amended Complaint was originally filed under docket number 04 Civ. 7415, but was consolidated, by Order of the Court dated October 26, 2004, with the other related actions filed by Plaintiffs.
[3] The Amended Complaint also cites to and references the CFTC press release and settlement agreement reached with Western. (See Amended Complaint ¶ 148 n. 76.) As with the CFTC and FERC reports incorporated into the complaints at issue in Natural Gas I, the Court may consider these materials, which have been incorporated into the Amended Complaint, in the context of Western's motion to dismiss, without converting that motion into a motion for summary judgment. See Natural Gas I, 337 F.Supp.2d at 510 (citing Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir.1991)).
[4] A recent decision by another court in this District concurs with this conclusion. See Krause v. Forex Exchange Market, Inc., 356 F.Supp.2d 332 n. 49, 2005 WL 351104, at *5 n. 49 (S.D.N.Y. Feb. 10, 2005) (holding that CEA aiding and abetting claims sounding in fraud must comply with the requirements of Rule 9(b), per Rombach).
[5] Just as there is no reason to limit Rombach to allegations of securities fraud, it makes little sense to apply caselaw articulating standards applicable to allegations of market manipulation only when the allegations concern claims under the securities laws. Furthermore, even though Plaintiffs allege in the Amended Complaint that Western and other defendants made affirmative misrepresentations concerning trade data, application of the market manipulation standard is still called for in this case, where the precise mechanisms by which the alleged collusive scheme among gas companies to manipulate gas prices was effectuated is likely to be unknown to Plaintiffs without further discovery.
[6] Western argues that because the CFTC Order only found Western to have attempted market manipulation for part of the period at issue in the litigation, and did not specify that the attempted manipulation concerned NYMEX futures contracts, the CFTC's findings cannot be used to support the allegations of the Amended Complaint. (See Western Mem. of Law at 5-9.) This argument is disingenuous, at best. It is clear that the Amended Complaint seeks to connect Western's false reports to Gas Daily to the actual manipulation of natural gas market indices, which in turn directly influence the pricing of NYMEX natural gas futures. The connection among pricing data, market indices, and spot and futures prices is a logical one that is supported by reports issued by FERC and other sources cited by the Amended Complaint. Despite Western's protestations to the contrary, the fact that the CFTC's settlement with the company did not allege actual market manipulation is irrelevant at this stage of the proceedings. The Court notes that CFTC settlement orders with other defendants in this consolidated action only charged attempted market manipulation, rather than actual market manipulation. See, e.g., Press Release, CFTC, U.S. Commodity Futures Trading Commission Imposes a Total of $50 Million in Civil Penalties on Six Energy Trading Firms (Jan. 28, 2004), available at http:// www.cftc.giv/opa/enf04/opa4883-04.htm (settling charges against two defendant companies for false reporting and attempted market manipulation, and against four other defendant companies for false reporting only); Press Release, CFTC, U.S. Commodity Futures Trading Commission Imposes a Total of $34 Million in Civil Penalties on Three Energy Trading Firms (Nov. 25, 2003), available at http://www.cftc.giv/opa/enf03/opa4869-03.htm (settling charges against three defendant companies for false reporting and attempted market manipulation, and against one defendant company for engaging in wash sales). The CFTC may have done so for a variety of reasons, including the desire to achieve speedy settlements, to avoid having to demonstrate the effect of individual companies' false reporting practices on the natural gas market. It is Plaintiffs' prerogative to allege, and seek to prove, logical connections between the CFTC's findings and other, more serious, allegations.
[7] Western's arguments that Plaintiffs' allegations with respect to Western's false reports to Gas Daily are "Delphic," in that they fail to allege "what was actually said, when and where it was said, what transactions were purportedly implicated, and why whatever was said was allegedly false" (see Western Mem. of Law at 19-20), are similarly disingenuous. The CFTC Order alleges a pattern of false reporting by several Western employees, and further alleges that several traders sought to manipulate the price of natural gas through their actions. While the names of the traders and the circumstances of the false reports are not contained in the CFTC Order, which merely attempts to summarize evidence of Western's CEA violations, the Order indicates that Western must know the facts underlying the CFTC's summary findings. The CFTC Order notes that Western itself "promptly uncovered the nature and extent of the misconduct and brought it to the attention of DOE [the Division of Enforcement]," and "terminated the staff who directed the false reporting and attempted manipulation," among other acts taken in response to the CFTC's inquiry. See CFTC Order at 2-3. Thus, to the extent that the Amended Complaint contains generalities rather than the specifics that may be called for by Rule 9(b), it is because the specific facts underlying Plaintiffs' allegations are exclusively within the knowledge of Western and perhaps the CFTC, but not the public. A relaxation of Rule 9(b)'s pleading standards are called for under these circumstances, particularly where the factual basis for the allegations is clearly alleged and is supported by the CFTC Order. See DGM Investments, Inc. v. New York Futures Exchange, Inc., 265 F.Supp.2d 254, 264 (S.D.N.Y.2003) (concluding that Rule 9(b)'s "pleading requirements may be relaxed when the information is exclusively within the defendant's knowledge as long as the factual basis for allegations based upon information and belief are adequately set forth") (quoting Grunwald v. Bornfreund, 668 F.Supp. 128, 131 (E.D.N.Y.1987)).