**U.S. COMMODITY FUTURES TRADING COMMISSION,**
**Plaintiff,**

v.

**Denette JOHNSON, et al, Defendant.**

**No. CIV.A. H–05–0332.**

United States District Court,
S.D. Texas,
Houston Division.

Oct. 4, 2005.

---

Joseph Konizeski, John W. Dunfee, Paul G. Hayeck, Commodity Futures Trading Commission, Washington, DC, for Plaintiff.

Robert J. Sussman, Hinton Sussman et. al., William G Rosch, III, Rosch & Ross, Chris Flood, Flood & Flood, David Gerger, David Gerger et. al., Eric J. R. Nichols, Beck Redden & Secrest, Henry James Fasthoff, IV, Stumpf Craddock Massey Farrimond, Edward Matt Hennessy, Deguerin Dickson and Hennessy, Houston, TX, for Defendants.

### MEMORANDUM OPINION
### AND ORDER

HOYT, District Judge.

## I. INTRODUCTION

Pending before the Court are separate motions to dismiss filed by the defendants, Denette Johnson ("Johnson"), Courtney Cubbison Moore ("Moore"), John Tracy ("Tracy"), Robert Harp ("Harp"), Anthony Dizona ("Dizona") and Kelly Dryer ("Dryer")[1] (collectively referred to as the

---

1. Kelly Dryer is not a trader, but is charged with aiding and abetting through circulating false reports and e-mails between and among the traders and various trade magazines.

"trader-defendants") (Docket Nos. 18, 19, 20, 21, 22, 23, and 24). Also pending is a joint motion to dismiss collectively filed by the defendants. (Docket No. 21). The plaintiff, The United States Commodity Futures Trading Commission ("CFTC") has commenced this action alleging that the defendants have violated certain provisions of the Commodity Exchange Act (the "CEA") by knowingly delivering false, misleading and knowingly inaccurate trade information, including price and volume information, concerning natural gas transactions to reporting firms in an attempt to manipulate natural gas prices. Specifically, the complaint charges that the defendants violated the false reporting and attempted manipulation provisions of § 9(a)(2) of the CEA, 7 U.S.C. § 13(a)(2).

The defendants have filed their motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b). After an exhaustive consideration of the motions, consolidated response, consolidated reply, pleadings and the applicable law, the Court DENIES the defendants' motions to dismiss.

## I. FACTUAL BACKGROUND

CFTC alleges that from at least October 2001 through June 2002, the defendants engaged in practices that constitute violations of the CEA. Specifically, during the relevant time period, the trader-defendants were employed as traders by Shell Trading Gas and Power ("STGP") and were in the business of buying and selling natural gas for profit on behalf of Coral Energy Resources, L.P. ("Coral"). Coral is a North American Energy Company engaged in the buying, selling, transportation and storage of physical energy commodities including, but not limited to, physical natural gas. The trader-defendants bought and sold natural gas and related instruments for speculative purposes in behalf of Coral to generate a profit for Coral. To that end, the trader-defendants often entered into transactions for the actual delivery of natural gas ("physical trades"). When negotiating a physical trade, the parties usually agree upon a fixed price or agree that the price would be set with reference to an index to be published at a later date.

Sometime between October 2001 and June 2002, CFTC contends that the trader-defendants reported natural gas market information, including price and volume data of purported natural gas trades, to certain services called reporting firms. These reporting firms, in turn, issued monthly indices for various gas hubs in certain commercial trade magazines covering the natural gas industry, such as *Inside FERC Gas Market Report* ("IF-ERC"), *Gas Daily*, and *Natural Gas Intelligence* ("NGI"). The *IFERC* and *NGI* natural gas price indices were used by a variety of market participants in the spot and over-the-counter derivatives markets to price and settle their natural gas deals. *IFERC* and *NGI* natural gas price indices were also used by natural gas futures and option traders for price discovery and for assessing price risks.

CFTC alleges that during this time, October 2001 through June 2002, the trader-defendants were trading natural gas for Coral's West Desk, which was responsible for trading natural gas in certain discrete areas of the Western United States. Around this time, CFTC alleges that the trader-defendants knowingly delivered information regarding thousands of individual fixed-price, physical, baseload natural gas trades for the West Trading Desk as "Coral" trades to *IFERC* and *NGI*. However, the vast majority of the trades reported to *IFERC* and *NGI* by the trader-defendants were not trades actually executed by STGP or Coral. Instead, CFTC alleges that the vast majority of trades

reported were trades that were purportedly executed by and between other market participants. Specifically, CTFC alleges that the trader-defendants knowingly delivered reports containing knowingly inaccurate fixed-price, physical, baseload trade information for at least nine locations, including El Paso Permian Basin, San Juan Basin, Southern California, PG & E Citygate, PG & E Topock, Malin, Rockies and Northwest Pipeline.

By way of example, CFTC states that on June 28, 2002, the trader-defendants reported as "Coral Energy Resources July 2002 Deals," trade information for 158 separate fixed-price, physical, baseload trades at these locations. However, during the pertinent bidweek of June 2002, all traders in the West Desk actually executed a total of 13 fixed-price, physical, baseload trades at those locations. Further, CFTC recalls that only one trade that the trader-defendants actually executed appears on the spreadsheet provided to *IFERC*. CFTC states that the trader-defendants' reports of fixed, price, physical, baseload trade information for these locations were sent to *IFERC* and *NGI*, both of which issued price indices for at least some of those locations.

Each month during midweek, from at least October 2001 to January 2002, and from March 2002 until approximately June 2002, CFTC alleges that Dyer, circulated an e-mail specifically to the individuals on the West Desk that reported trade information to *IFERC* and *NGI*, including the trader-defendants (hereinafter the "Index Directions e-mail"). In February 2002, CFTC contends that Moore circulated an e-mail that was functionally the same as the Index Directions e-mail. These e-mails were circulated prior to circulation of the spreadsheet used to report information to *IFERC* and *NGI*. During this window of time, usually on or about the last day of bidweek, Dyer is alleged to have sent out the Index Directions e-mails.

The Index Directions e-mails included as an attachment a spreadsheet listing the locations for which the West Desk reported price and volume information to the indices. The spreadsheet also contained three columns of information for each location. The first column contained the trader's mark, *i.e.*, the trader's estimate of what the index would publish as the price for a location. Each mark, or estimate, was obtained from the trader who was primarily responsible for the trading activity at a particular location. This same trader was also responsible for submitting trade information that would be reported to the price indices. The mark was obtained earlier by Dyer from the pertinent trader. The second and third columns were titled "Up" and "Down," respectively. Under the Up and Down columns were the words "Bad" or "Good". The word "Bad" was in a red-colored font and the word "Good" was in a green-colored font. CFTC alleges that Dyer inputted the words "Good" or "Bad" in the e-mail's spreadsheet depending on whether the index publishing above or below the trader's mark would positively or negatively affect Coral's revenues.

CFTC argues that the purpose of the Index Directions e-mail was to direct the trader-defendants to report trade information to the price indices so that it would benefit Coral's revenues. As such, in responding to the Index Directions e-mails, CFTC states that the trader-defendants knowingly reported biased trade information to *IFERC* and *NGI* with the intent to impact the price of natural gas in interstate commerce. CFTC contends that if the manipulation of the price of natural gas had been successful, it could have impacted the price of natural gas and natural gas futures and option contracts traded on

the New York Mercantile Exchange ("NYMEX").

Consequently, on or about February 1, 2005, CFTC commenced the instant action alleging four (4) counts in its complaint. In count I of its complaint, CFTC alleges that the trader-defendants violated § 9(a)(2) of the Act when they knowingly delivered by facsimile, e-mail or other means in interstate commerce, false or misleading or knowingly inaccurate information "concerning crop or market information or conditions that affect or tend to affect the price of any commodity in interstate commerce" to the natural gas reporting firms. In count II, CFTC alleges that the trader-defendants violated §§ 6(c) and 6(d) and 9(a)(2) of the CEA, 7 U.S.C. § § 9, 13a-2 and 13(a)(2), by attempting to manipulate the price of natural gas. In count III, CFTC alleges that trader-defendants Moore and Dyer willfully aided and abetted or acted in combination or concert with trader-defendants Johnson, Moore, Tracy, Harp and Dizona in violating the Act. In count IV, CFTC alleges that Johnson directly or indirectly controlled trader-defendants Moore, Tracy, Harp, Dizona and Dyer and failed to act in good faith or knowingly induced the acts constituting the violations. All defendants now move the Court to dismiss CFTC's complaint.

## III. CONTENTIONS OF THE PARTIES

This case involves numerous defendants. Each defendant has filed a separate motion to dismiss CFTC's complaint. All motions are now pending before this Court. In addition, the defendants collectively have filed a joint motion to dismiss. In large part, the defendants have asserted the same and/or similar defenses. Generally, the defendants argue that CFTC's complaint must be dismissed for the following reasons: (1) CFTC has failed to state a claim under Fed.R.Civ.P. 12(b)(6); (2) CFTC has failed to satisfy the heightened pleading requirement under Fed. R.Civ.P. 9(b); (3) the Court lacks subject matter jurisdiction under Rule 12(b)(1)[2]; **(4) the complaint fails to allege scienter; and (5) their activities are exempt from the CEA according to 7 U.S.C. §§ 2(g) and 2(h).**

CFTC argues that the complaint's allegations amply state false reporting and attempted manipulation claims against all the defendants. CFTC contends that the CEA clearly prohibits the actions described in the complaint. CFTC also argues that neither § 2(g) nor § 2(h) of the Act exempts or otherwise excludes the defendants' conduct from the jurisdiction of the Act. CFTC further alleges that the 1993 Order exempting natural gas from regulation is consistent with its position. Finally, CFTC argues that the language of § 9(a)(2) is clear and unambiguously addresses the conduct engaged in by the defendants.

## IV. STANDARD OF REVIEW

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss for "failure to state a claim upon which relief may be granted." The defendant must leap a high hurdle in order to prevail on this motion: the defendant must prove

---

2. Only Dizona has specifically alleged that CFTC's Complaint should be dismissed on the basis of a lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). After a review of the pleadings, this Court determines that from the face of the pleadings, it has subject matter jurisdiction over the acts and practices alleged in the complaint. Therefore, the Court finds that the defendants' assertions are without merit and should be denied.

"beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Under the demanding strictures of a 12(b)(6) motion to dismiss, "the plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir.1996). In essence, "the district court must examine the complaint to determine whether the allegations provide relief on any possible theory." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001). In ruling on such a motion, the Court cannot look beyond the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). However, a plaintiff must plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of La-Place*, 954 F.2d 278, 281 (5th Cir.1992). The Court will not pull together a "tangled web" of multiple pleadings and actions to ascertain whether a plaintiff has enunciated a meritorious claim. *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1157 (5th Cir.1992), *cert. denied*, 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993).

Finally, while an affirmative defense may technically be used to dismiss a Complaint under Rule 12(b)(6), the "applicability of the defense has to be clearly indicated and must appear on the face of the pleading to be used as the basis for the motion." 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed.2004) (citing, *inter alia, Kansa Reinsurance Co., Ltd. v. Congressional Mortg. Corp. of Texas*, 20 F.3d 1362 (5th Cir.1994)); *see also Clark v. Amoco Production Co.*, 794 F.2d 967 (5th Cir. 1986).

## B. Rule 9(b)

Federal Rule of Civil Procedure 9(b) provides, "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b); *In re Natural Gas Commodity Litigation*, 358 F.Supp.2d 336 (S.D.N.Y.2005). "Malice, intent, knowledge and other condition of mind of a person may be averred generally." FED. R. CIV. P. 9(b).

## V. DISCUSSION AND ANALYSIS

### A. Claims for Dismissal Under Rule 12(b)(6)

The defendants present several arguments in support of their allegation that CFTC's complaint should be dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. The Court will address each argument in relation to the counts plead.

### 1. *Count I: Knowing Delivery of Knowingly Inaccurate Information*

Count I of CFTC's complaint alleges that trader-defendants Johnson, Moore, Tracy, Harp and Dizona violated Section 9(a)(2) of the Act when they knowingly delivered, by facsimile and e-mail or other means in interstate commerce, false or knowingly inaccurate market information as well as entirely fictitious purported gas trades and/or failed to include actual natural gas trades made by themselves. Pursuant to § 9(a)(2) of the Act, 7 U.S.C. § 13(a)(2), it is a violation for a person

 ... knowingly to deliver or cause to be delivered for transmission through the mails or interstate commerce by telegraph, telephone, wireless, or other means of communication false or misleading or knowingly inaccurate reports concerning crop or market information or conditions that affect or tend to affect

the price of any commodity in interstate commerce. . . .

In order to state a claim for false reporting, CFTC must establish that: (1) a defendant knowingly delivered or caused to be delivered market reports or market information through interstate commerce; (2) that the information was knowingly false or misleading; and (3) the information affected or tended to affect the price of a commodity in interstate commerce. *See United States v. Valencia,* 394 F.3d 352 (5th Cir.2004).

In this case, CFTC alleges in its complaint that the trader-defendants, knowingly submitted to reporting firms trade information, including the price and volume information of purported trades in natural gas for at least nine locations. The complaint alleges that the trade information submitted was knowingly false or misleading, in that it represented thousands of individual fixed-price, physical, baseload natural gas trades as "Coral" trades when, in fact, the trades reported were not trades actually executed by STGP or Coral. The complaint also alleges that the trader-defendants knew the trades were not "Coral" trades. The complaint further alleges that the trade data reported by the trader-defendants "was always reported in a form that made it appear that the trades being reported were fixed-priced, physical, baseload trades executed by Coral Energy Resources during bidweek."

Finally, the CFTC's complaint alleges that "because market participants use *IFERC* and *NGI* in the natural gas spot, over-the-counter derivatives, futures, and option markets, the price and volume data reported by the trader-defendants to those publications is market information that affects or tends to affect the price of natural gas in interstate commerce." Based on the foregoing, the Court finds that the facts alleged in CFTC's complaint adequately state a claim against the defendants for the delivery of knowingly inaccurate information that withstands the strictures of Fed.R.Civ.P. 12(b)(6).

## 2. Count II: Attempted Manipulation of the Natural Gas Price Indices

▮ Count II of CFTC's complaint alleges that the trader-defendants attempted to manipulate the market price of natural gas in violation of § § 6(c) and 6d and 9(a)(2) of the CEA, 7 U.S.C. § § 9, 13a-2 and 13(a)(2). In order to prove an attempted manipulation claim, one must establish: (1) an intent to affect the market price; and (2) some overt act in furtherance of that intent. *See In re Hohenberg Bros. Co.,* [1975–1977 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 20,-271 at 21,477 (CFTC Feb. 18, 1977). To demonstrate the intent element of an attempted manipulation claim, CFTC must show that the defendants "acted (or failed to act) with the purpose or conscious object of causing or effecting a price or price trend in the market that did not reflect the legitimate forces of supply and demand." *In re Indiana Farm Bureau Coop. Ass'n,* [1982–1984 Transfer Binder] Comm. Fut. Law. Rep. (CCH) ¶ 21,796, 27,288, n. 2. (CFTC Dec. 17, 1982).

In the instant case, CFTC alleges that the trader-defendants had the intent to affect the market price of natural gas in interstate commerce and overtly acted in furtherance of that intent to affect the market price of natural gas. Specifically, CFTC alleges that in responding to the Index Directions e-mail, the trader-defendants knowingly committed the overt act by submitting and/or reporting biased trade information to *IFERC* and *NGI* with the intent to affect the price of natural gas in interstate commerce. CFTC contends that had the trader-defendants' manipu-

lation of the price of natural gas been successful, it could have affected the price of natural gas and the price of natural gas futures and option contracts traded on the NYME.

■ Here, CFTC is not required to specifically assert a profit motive or a likelihood that the defendants' alleged price manipulation would actually affect market prices. *See In re Hohenberg Bros. Co.*, 130 Wash.2d 1024, 930 P.2d 1230, 1977 WL 13562 at *8 ("We do not agree … that a 'profit motive' or a 'demonstrated capability of realizing manipulation' are necessary elements of a manipulation or an attempted manipulation claim."). What is required is conduct that has the potential of affecting market prices. Thus, the facts, as alleged indicate that the trader-defendants intended to affect the price of physical natural gas in interstate commerce by submitting reports that contained biased information to the reporting firms. Based on the foregoing, CFTC appears to have sufficiently alleged an attempted manipulation claim and; therefore, a dismissal under Rule 12(b)(6) is unwarranted.

### 3. *Count III: Aiding and Abetting*

■ Count III of CFTC's complaint alleges that defendants Moore and Dyer aided and abetted or acted in concert with the trader-defendants in the commission of the violations of the Act. Section 13(a) of the CEA makes it illegal for any person to willfully aid, abet, counsel, command, induce or procure the violation of any provision of the Act. 7 U.S.C. § 13c(a). In order to establish a claim of aiding and abetting under the CEA, CFTC is required to show that a defendant knowingly participated in the violation alleged with the specific intent to further the violation. *See Apex Oil v. DiMauro*, 713 F.Supp. 587, 603 (S.D.N.Y.1989); *See also In re Richardson Securities, Inc.*, [1980–1982

Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 21,145 at 24,646 (CFTC 1981). In addition to specific intent, it must be shown that the assistance rendered was substantial. *See Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 88 (5th Cir. 1975).

The trader-defendants allege that CFTC's complaint fails to allege how forwarding the alleged e-mails would further a CEA violation or prove an unlawful intent to further the violation. Moreover, they assert that CFTC's complaint fails to allege that Moore or Dyer's administrative act substantially assisted the alleged scheme. This Court, on the other hand, finds that CFTC's complaint does, in fact, allege how forwarding the alleged e-mail would further the CEA violation. Specifically, with regard to Moore, CFTC's complaint alleges that in February 2002, Moore circulated an e-mail that was functionally the same as the Index Directions e-mail with general knowledge and/or awareness that the e-mail being forwarded contained false and biased information concerning natural gas transactions that were reported in such a way that would ultimately benefit Coral. Thus, this Court finds that the complaint adequately alleges that the defendant Moore substantially assisted the trader-defendants in their alleged scheme in February 2002.

This Court also finds that CFTC's complaint sufficiently alleges a claim against Dyer for aiding and abetting because the facts as set forth in the complaint state that: (1) each month, during bidweek, she circulated an Index Directions e-mail specifically to the individuals on the West Desk that reported trade information to the reporting firms; (2) prior to circulating the Index Directions e-mail, she obtained the trader's estimate of what the index would publish as the price for a location; and (3) at least, on one occasion, in an

October 31, 2001, Index Directions e-mail, she included the text, "Please see the attached spreadsheet about where we should report indexes." Based on the foregoing, the Court finds that CFTC's complaint sufficiently alleges that Dyer knowingly participated in the violation alleged with the specific intent to further the violation and rendered substantial assistance to the false reporting and attempted manipulation scheme by providing the information necessary for the trader-defendants to submit their reports to the reporting firms for publication so as to benefit Coral's revenues.

### 1. *Count IV: Controlling Person Liability*

 Count IV alleges that Johnson directly or indirectly controlled trader-defendants and failed to act in good faith or knowingly induced the acts constituting the violations and is, therefore, liable as a control person under 7 U.S.C. § 13c(b). Section 13(b) of the CEA provides that it shall be a violation for:

> Any person who, directly or indirectly, controls any person who has violated any provision of this chapter or any of the rules, regulations, or orders issued pursuant to this chapter may be held liable for such violation in any action brought by the Commission to the same extent as such controlled person. In such action, the Commission has the burden of proving that the controlling person did not act in good faith or knowingly induced, directly or indirectly, the act or acts constituting the violation.

7 U.S.C. § 13c(b). "To support a finding that a controlling person knowingly induced conduct which violates the Act, 'the Division must show that the controlling person had actual or constructive knowledge of the core activities that constitute the violation at issue and allowed them to continue.'" *JCC, Inc. v. Commodity Futures Trading Comm'n*, 63 F.3d 1557, 1568 (11th Cir.1995) (quoting *In re Spiegel*, [1987–1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 24,103 at 34,767 (CFTC Jan. 12, 1988) (footnote omitted)). This provision is construed to include individuals, associations, partnerships, corporations and trusts that exercise control over persons who violate the Act and fail to act in good faith. *See Monieson v. Commodity Futures Trading Comm'n*, 996 F.2d 852, 859 (7th Cir.1993) (denoting that "If Congress wanted to limit Section 13(b) to the alter ego situation, it would have been more specific; as it stands the section encompasses those who control individuals, regardless of whether they are also using a corporation as an alter ego.") A controlling person is said to fail to act in good faith if he "'did not maintain a reasonably adequate system of internal supervision and control over the [employee] or did not enforce with any reasonable diligence such system.'" *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 881 (1992) (quoting *Henricksen v. Henricksen*, 640 F.2d 880, 884 (7th Cir.1981)).

Here, CFTC has alleged that Johnson was a trader, as well as the head of the West Trading Desk was responsible for the actions and conduct of the West Desk trading employees. CFTC's complaint alleges that Johnson controlled the activities of and was aware of the price reporting activities of the other defendants as well as the Index Directions scheme, but did not take steps to prevent these activities. Further, CFTC's complaint alleges that, in spite of the fact that Johnson controlled the activities on the West Trading Desk, she took no steps to enforce the company policy regarding communicating with pric-

ing agencies with reasonable diligence.[3] Thus, this Court concludes that CFTC has sufficiently alleged a claim against Johnson for liability as a controlling person so as to withstand dismissal under Rule 12(b)(6).

## B. Claims for Dismissal Under Rule 9(b)

 The trader-defendants contend that CFTC's complaint should be dismissed pursuant to Fed.R.Civ.P. 9(b) because it fails to satisfy the Rule's heightened pleading requirement. According to the defendants, Rule 9(b) should apply here just as it does in cases for securities fraud claims. CFTC alleges that, in the CEA framework, unlike the 1934 Securities Act, acts of fraud and acts of false reporting and manipulation are distinct and set forth in separate provisions of the Act.[4] In this case, the defendants have supplied no authority for the proposition that Rule 9(b) applies to claims brought under 7 U.S.C. § 13(a)(2), such as the false reporting claims alleged in count I of CFTC's complaint. In light of the trader-defendants' failure to cite to any case supporting the imposition of such a requirement, this Court declines to require CFTC to plead its case consistent with the strictures of Fed.R.Civ.P. 9(b).

 With regard to the claim of attempted manipulation alleged in count II of CFTC's complaint, this Court finds that the heightened pleading standard does not apply. This district has held that "claims brought under §§ 6(c), 6d, and 9(a)(2) of the CEA, 7 U.S.C. §§ 9, 13a-2, 13(a)(2), need not be pled with the factual specificity required by Fed.R.Civ.P. 9(b)." See *Commodity Futures Trading Comm'n v. Enron Corp.*, 2004 WL 594752 (S.D.Tex. Mar.10, 2004); *Three Crown Ltd. Partnership v. Caxton Corp.*, 817 F.Supp. 1033, 1043, n. 19 (S.D.N.Y.1993). However, assuming arguendo, that the Court were to apply the heightened pleading requirements of Rule 9(b), case law provides that courts applying Rule 9(b) to such manipulation claims, have applied a more flexible standard than the generic standard that applies to allegations of fraudulent statements. *In re Natural Gas Commodity Litigation*, 358 F.Supp.2d 336, 343 (S.D.N.Y.2005). To satisfy this relaxed pleading standard of Rule 9(b), a market manipulation claim must specify "'what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue.'" *Id.* (citing *SEC v. U.S. Environmental*, 82 F.Supp.2d 237, 240 (S.D.N.Y.2000)) (quoting *T.H.C., Inc. v. Fortune Petroleum Corp.*, 1999 WL 182593 at *3 (S.D.N.Y.Mar.31, 1999)).

 Here, CFTC is not required to specify the effect that the trader-defendants' scheme had on the market because CFTC has alleged only an attempted manipulation claim. With respect to the remaining elements, the Court finds that they have been sufficiently pleaded in CFTC's complaint. Specifically, CFTC's

3. The Complaint alleges that STGP and Coral maintained a company policy on Communication with Pricing Agencies. The policy prohibits communicating deal/price information to recognized journalists of reputable publications by any employee other than those employees in nominated positions. The policy further states that "It is not in Shell's interest that this reporting information is distorted ...." (Compl. at 6, ¶ 20.)

4. CFTC alleges that §§ 4b and 4o of the CEA are analogous to § 10(b). *See Hill v. Bache Halsey Stuart Shields, Inc.*, 790 F.2d 817, 822 n. 8 (10th Cir.1986) (requiring willful misconduct for violations of §§ 4b and 4o "comports with the interpretation given to an analogous antifraud provision in federal securities law, § 10(b)").

complaint specifies: (1) *the manipulative acts allegedly performed*—the trader-defendants' dissemination of false, misleading or knowingly inaccurate information to the reporting firms; (2) *which defendants performed them*—the trader-defendants performed these acts or caused them to be performed and they were aided and abetted by Moore and Dyer; and (3) *when the manipulative acts were performed*—CFTC's complaint alleges that the manipulative acts were performed from at least October 2001 through June 2002. Therefore, even assuming that the pleading standards of Rule 9(b) apply, this Court finds that the facts alleged in CFTC's complaint are sufficient to withstand dismissal under Rule 9(b).

## C. Claims of Exemption Under 7 U.S.C. § § 2(g) and 2(h)

The trader-defendants argue that the conduct alleged by CFTC in its complaint is explicitly exempted and excluded from reach of the CEA and CFTC authority. This Court disagrees. Pursuant to 7 U.S.C. § 2(g), the CEA shall not apply to or govern:

any agreement, contract, or transaction in a commodity other than an agricultural commodity if the agreement, contract, or transaction is—

(1) entered into only between persons that are eligible contract participants at the time they enter into the agreement, contract, or transaction;

(2) subject to individual negotiation by the parties; and

(3) not executed or traded on a trading facility.

In addition, 7 U.S.C. § 2(h)(1) provides:

(1) Except as provided in paragraph (2), nothing in this chapter shall apply to a

contract, agreement, or transaction in an exempt commodity [5] which—

(A) is entered into solely between persons that are eligible contract participants at the time the persons enter into the agreement, contract, or transaction; and

(B) is not entered into on a trading facility.

7 U.S.C. § 2(h)(1). The trader-defendants assert that these exemptions and exclusions apply to the conduct at issue in CFTC's complaint. They argue that it cannot be disputed that natural gas is not an "agricultural commodity" within the meaning of § 2(g) and that the transactions at issue were subject to individual negotiation between private parties and not executed or traded on a trading facility. Further, they argue that the CEA provides that "nothing in this Act shall apply" to qualifying transactions in "exempt commodities." *See* § 2(h)(1).

Sections 2(g) and 2(h), as referenced by the trader-defendants, do not exempt from the Act *any* conduct or activity related to exempt commodities, or that the CEA does not apply to those commodities themselves. *See United States v. Valencia,* 2003 WL 23174749 at *11 (S.D.Tex. Aug.25, 2003) ("[Defendant's] reading of the CEA's exemption in § 2(h)(1) and the exception to that exemption in § 2(h)(2)(C) ignore the predicate language in § 2(h)(1) confining the entire exemption to *contracts* in exempt commodities." (emphasis in original)). Instead, the exemptions are, by their terms, limited to contracts, agreements or transactions—denoting mutual exchanges between parties creating rights or obligations that are enforceable at law. *See* BLACK'S LAW DICTIONARY (8th

---

**5.** An "exempt commodity" is any commodity that is not an "excluded commodity" or an "agricultural commodity," § 1a(14). Natural gas constitutes an "exempt commodity" as defined under the statute.

ed.2004). The trader-defendants' reporting activities do not fall within the express meaning of a contract, transaction or agreement. As a result, the Court determines that because the exemptions found in § § 2(g) and 2(h) do not apply to the trader-defendants' reporting activities alleged in the complaint, CFTC's complaint is not subject to dismissal.

## VI. CONCLUSION

For the reasons stated, the Court is of the opinion and holds that the Defendants' motions to dismiss should be DENIED.

It is so **Ordered.**